# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DEAN E. GILBERT** | **CIVIL ACTION** |
| **VERSUS** | **NO:    17-04786 c/w** |
| | **17-12195** |
| **SIDNEY H. CATES, ET AL.** | **SECTION: "H" (4)** |

## ORDER AND REASONS

Before the Court is Plaintiff's **Motion for Leave to File First Amendment of Consolidated Complaint (R. Doc. 33)** and **Motion to File a Supplemental or Second Amended Complaint (R. Doc. 65)**. The motions are opposed. R. Doc. 41, 45, 46, 67, 68. The motions were heard on the briefs.

## I.    Background

### A.    Original Complaint

Plaintiff, Dean Gilbert ("Dean Jr."), filed this lawsuit contending that his constitutional rights,[1] Title 42 U.S.C. § 1981[2], 1983[3], and 1985[4] were violated and alleges state law claims[5] in a

---

[1] Gilbert contends that the defendants violated his Civil Rights in violation of the First Amendment (protecting the free exercise of religion, speech and press, assembly, and petition for redress of grievances), Fourth Amendment (protects the right to be secure in your house and papers against search and seizure), Fifth Amendment (provides for a grand jury, protects against double jeopardy, provides for due process, and against compulsory witness), Eighth Amendment (protects against excessive bail and cruel and unusual punishment), and Fourteenth Amendment (protects against laws that abridge the privileges or immunities of citizens, provides for due process and equal protection).

[2] Section 1981 protects the right to make and enforce contracts.

[3] Section 1983 provides the right to sue the government for civil rights violations.

[4] Section 1985 provides for damages for a conspiracy to interfere with civil rights and failure to report if conspiracy is known.

[5] Gilbert also alleges the following state law violations: (1) malicious prosecution; (2) conspiracy; (3) retaliation; (4) negligence; and (5) intentional inflection of emotional distress.

state court succession proceeding involving the death of his mother Bernadette Gaines Gilbert. Dean Jr. contends that after his mother died intestate on December 9, 2011, his brother Dwight persuaded their father, Dean Gilbert Sr., who was experiencing cognitive decline, that Dean Jr. had killed his mother and conspired with other relatives to kill their father.

While the father remained in Michigan with his brother, Dean Jr. alleges that Road Home demanded that he open his mother's estate to pay a contractor for construction work done on her home post Hurricane Katrina through its Small Rental Property Program.  As a result, he opened his mother's succession through Duty Judge Robin Giarrusso, rather than the allotted judge, Judge Sidney Cates on February 29, 2012 and was appointed the succession's administrator on March 1, 2012.  He contends that he notified all heirs of his appointment by voicemail and certified mail. R. Doc. 33-1, p. 9.

The Court notes that upon learning that Dean Jr. had filed a motion seeking to have himself appointed as succession administrator, the family members filed a motion to revoke the appointment on April 26, 2012.   Due to a procedural defect in the appointment pleadings, Dean Jr.'s appointment was deemed null and this saga began.

 Dean Jr. alleges that Judge Cates used his judicial office to retaliate against him.[6]  He does not allege how the judge retaliated and nor does he allege why he would retaliate.  Nevertheless he also alleged that the state court judge conspired with Sheriff Marlin Gusman and "others" to violate his civil rights.

While the original complaint clearly attempts to assert a civil rights claim against Judge Cates and Sheriff Gusman, the lawsuit also identify as parties, Baldwin Haspel Burke & Mayer,

---

[6] On November 8, 2017, the Louisiana Fourth Circuit affirmed the Judgement of Possession rendered by the trial court  on partially May 2012 and October 12, 2015 relative to his mother's succession.  The Circuit court noted that Dean in the underlying proceeding filed a multitude of pleadings, all containing abusive and discourteous language toward the judges of Civil District Court and the law firm representing the succession.

LLC, a Louisiana law firm, Thomas J. Cortazzo, Joel Mendler, Karl Zimmerman and Brodie Glenn, attorneys with the Baldwin Haspel firm who were retained to represent his brother Dwight in the succession proceedings. Dean Jr. also named his brother Dwight Gilbert, Michelle Mouton, the law clerk to Judge Cates, and Laurie Hendrickson, the court reporter to Judge Cates as defendants. Finally in the original complaint, Dean Jr. also sued the Parish of Orleans. He does not, however, set forth any allegations against any of the defendants other than his brother, the judge, and a rather vague allegation against Sheriff Gusman.

Thereafter, motions to dismiss were filed by the sheriff, court reporter, the law clerk, the judge, the attorneys, and their law firm. R. Docs. 3, 5, 6, 11, 22, 24 and 29. In response to the motions to dismiss, Dean Jr. filed a motion seeking permission to file an amended complaint on October 23, 2017, which was granted. R. Doc. 13. Dean Jr. was granted an extension until November 12, 2017 to file his amended complaint. R. Doc. 14. He then filed a motion seeking an extension of the deadline until November 27, 2017, which was granted by the undersigned. R. Doc. 16. Dean Jr. filed the subject motion on February 12, 2018, some three (3) months late seeking to amend the complaint. R. Doc. 33. This proposed complaint is eighty-two (82) pages in length.

## B. The Proposed Amended Complaint

The proposed Amended Complaint seeks to add eighteen (18) new defendants and assert new causes of action, some having criminal connotations.[7] In the proposed amended complaint, Dean Jr. alleges that because he and his brother do not speak to one another, he was not aware of the fact that the Baldwin Haspel firm was hired using their father's money to have him removed

---

[7] The proposed new claims include: (1) fraud; (2) conversion or theft; (3) identity theft; (4) elder abuse; (5) false imprisonment; (6) false imprisonment; (7) "over detention;" (8) defamation; (9) legal malpractice; (10) invasion of privacy; (11) breach of fiduciary duty; (12) unlawful arrest in presence of the media; (13) denial of due process; (14) violation of RICO statute; (15) mail fraud; (16) wire fraud; and (17) bank fraud.

as administrator. R. Doc. 33-1, p.9, ¶ 41. He contends that the Baldwin Haspel lawyers alleged that removing Dean Jr. as administrator was necessary to protect the successions assets, which according to Dean Jr. had already been converted by his brother and his lawyers. *Id.*

## 1. **Baldwin Haspel Burke & Mayer, LLC ("Baldwin Haspel")**

Dean Jr. alleges that the Baldwin Haspel lawyers (Cortazzo, Rouchell, Mendler, Zimmerman, Glenn),[8] sued in their "individual and official capacities," failed to advise the judge that they had already transferred and converted estate funds. He alleges that he was enjoined without a hearing and denied due process. He alleges that the lawyer then took the pleading, met with Judge Cates or his law clerk, and the judge signed a temporary restraining order, which he called a "second *ex-parte* order," removing Dean Jr. as administrator pending a hearing. He alleges that the hearing date was open-ended with no scheduled hearing date on the Rule to Show Cause why he should be removed as administrator. R. Doc. 33-1, ¶ 42. Dean Jr. alleges that once he was temporarily removed, he did not get notice of the hearing to permanently remove him as administrator and he was also denied a copy of the transcript by the court reporter. *Id.* at p. 10, ¶44.

Dean Jr. alleges that after the order was signed, his brother returned to the family rental home, evicted him from the property, and changed the locks. He alleges that the hearing for possession was scheduled in April of 2012, despite this fact he was neither served nor notified of the hearing because the law firm had him permanently removed as administrator and issued an order of usufruct to his father. Dean Jr. contends that the Baldwin Haspel lawyers have claimed

---

[8] Thomas Cortazzo, John A. Rouchell, Brodie Glenn, Karl Zimmerman, and Joel Mendler are each attorneys with the Baldwin Haspel firm who were retained by Dwight Gilbert to represent his father in the succession. Each of these defendants were sued individually and in their capacity as partner. R. Doc. 33-1.

post-judgment moneys that were not shared with him. As a result, he alleges that he needs to reopen the Succession to make his claim.

### 2.  Clark Hill, P.L.C.

Dean Jr. also sued the Michigan law firm privately retained by his father to draft his will which resulted in Dean Jr. being disinherited. R. Doc. 33-2, pp. 9-15.  He also sued the firm and its lawyer, Joseph Bonventure, because he also prepared a power of attorney for Dean Sr. which granted the power to handle his affairs to Dean Jr.'s brother Dwight and in the event of Dwight's death, Dwight's wife, Julia Gilbert. *Id.* at pp. 14-18.

### 3.  Michelle Mouton

Dean Jr. alleges that Judge Tiffany Chase coordinated with Michelle Mouton, Judge Cates's law clerk, who served as a signatory and issued a Rule to Show Cause on a petition for possession. R. Doc. 33-1, p. 9. He also seeks to sue her because she refused to notify him of certain unidentified court orders.  *Id.* at p. 12. Dean Jr. alleges that after he complained to the judge's law clerk about not sending him copies of significant orders, the judge issued an *ex parte* and *sua sponte* protective order against him presumably forbidding him from contacting her. He alleged that during the proceedings he had many oral and written questions that were sent to the judge's law clerk, but that his questions were ignored. *Id.* at. p. 15.

### 4.  Laurie Hedrickson

After his father was placed in possession of the property, Dean Jr. requested a copy of the transcript from Judge Cates's court reporter, Laurie Hendrickson.  He alleges that Hendrickson refused to provide him with a copy. He contends that this act denied him his civil rights and violated due process. He alleges that Hendrickson, like Mouton, refused to answer questions he submitted. *Id.*

Dean Jr. alleges that Hendrickson edited transcripts and refused to produce other transcripts for him and the media. *Id.* at p. 16. He further alleges that Hendrickson discriminated against him by denying him a public trial and access to his court file. *Id.* at p. 19.

He does not allege how Hendrickson "denied him a public trial," nor does he allege her role in the denial of "access to his court file," which is typically in the custody of the clerk of court. *Id.* He also alleges that Hendrickson, either alone or in concert, instigated his prosecution by falsely testifying against him and by providing misleading information. *Id.* at. p. 20.

Additionally, Dean Jr. alleges that Hendrickson, along with the judge, sheriff, and law clerk, intentionally caused him to be falsely imprisoned and arrested for which he seeks punitive damages. He also includes Hendrickson in the group of defendants who conspired to defraud his father and violated Dean Jr.'s due process rights by liquidating and transferring his father's property. *Id.* at p. 32.

### 5. Judge Sidney Cates

#### a. Section 1983 claims

Dean asserts rather incendiary allegations against Civil District Court Judge Cates both in his individual and official capacities. He alleges that the judge violated Title 42 U.S.C.A. Section 1983 because of alleged conflicts of interest because the judge presided over a case with "avid campaign contributors," held *ex-parte* communications with the campaign contributor, refused to reveal any business relationship with the law firm, allegedly instructed the court reporter to delete portions of the transcript, and avoided or refused to consider evidence of elder abuse, undue influence, theft, identity, money laundering and perjury by Baldwin Haspel and their client, Dwight Gilbert. Dean Jr. also alleges that the judge sealed and then unsealed the case record, closed and reopened the hearings, allowed attorney Cortazzo to waive his right to local rule 9.5,

and quashed subpoenas for the medical records of his father. He alleges that the judge twice convicted him of constructive and direct "criminal" contempt of court for allegedly the same offense without due process. *Id.* at p. 11, ¶ 45(q).

He alleges that the judge refused to hold the law firm accountable for taking money out of the safe deposit box, created opportunities for the judge's friends to sell the estate property, and charged excessive fees to the estate. Dean Jr. alleges that his discovery motion was denied, the judge refused to recuse himself after revealing the "relationship between the judge's personal friends and the succession," allegedly purged documents in the trial record, and disinherited Dean Jr. He alleges that the judge retaliated against him by denying him due process and violated his constitutional rights by assessing economic sanctions to chill his right to free speech.

In addition, Dean Jr. alleges that the judge unjustly held him in contempt and sentenced him to jail for eleven (11) days which he contends is outside of the judge's jurisdiction. He also alleges that the judge trampled over Dean Jr.'s First Amendment rights, refused to respond to a bill of particulars, and insisted on convicting him on vague and over broad charges. Dean Jr. alleges that the judge committed fraud by accepting false and perjured testimony, false and misleading documents, affidavits, as well as committing other "gross procedural errors." Dean Jr. alleges that the judge rubber stamped a final succession order that failed to indicate the final value of the estate and amount distributed to the heirs. *Id.* at p. 12.

He also alleges that the judge violated his due process rights because he was removed as the administrator of his mother's estate without a hearing. *Id.* at p. 41, ¶151. He alleges that the treatment he received from Judge Cates is because he treats lighter skinned African Americans more favorably than darker skinned African Americans. *Id.*

While the initial removal order was identified as temporary, when Dean Jr. showed up for the hearing the judge allegedly saw him, denied his request, and removed him as administrator of his mother's estate.

### b.  Injunction Against Prospective Retaliation

Dean Jr. seeks a temporary restraining order and permanent injunction prohibiting Judge Cates from retaliating against him.  He alleges that every order issued by Judge Cates against him was retaliatory and contends that it is because he is a dark skinned African American. R. Doc. 33-1, ¶ 45-54. Specifically, Dean Jr. requests that this court issue a temporary restraining order preventing Judge Cates from exercising jurisdiction of his mother's succession, in connection with his need to reopen the succession, and he alleges that he cannot do so without the risk of being imprisoned by Judge Cates.

### c.   Fraud

Dean Jr. also alleges that the defendants committed a fraud upon the court because the succession proceeding was wrought with false and perjured testimony, false and misleading documents and affidavits, and other procedural errors.  He alleges that he does not seek to reverse any of the rulings rendered in the succession case. *Id.* at p. 12, ¶46. Dean Jr. also alleges that Judge Cates, after learning about media queries due to his alleged treatment of and unequal administration of justice by dark versus light skinned African Americans, sealed the record, and barred the media from observing the final sanctions hearing. *Id.* at p. 13, ¶ 50.  Dean Jr. seeks a temporary restraining order and a preliminary injunction to prevent Judge Cates from exercising jurisdiction over the now closed case involving the Succession of Bernadette Gaines Gilbert. *Id.* at p. 14, ¶ 55. He alleges that he is "barred" from fully disclosing to this court the reason he is seeking an injunction against Judge Cates but would do so *in camera.*

### d. **First Amendment Rights**

Dean Jr. also alleges that Judge Cates violated his exercise of his First Amendment Rights when he ignored his questions on pending matters. As a result, Dean Jr. alleges that he would resubmit the questions for consideration because they were relevant to the issue before the court. He itemizes a sundry of questions which challenge the judge's rulings, his staff's action and refusal to authorize the production of documents, and information post his removal as the Administrator of the Succession.[9] He contends that because the judge was insulted and categorized his queries as insulting or discourteous, the judge violated Dean Jr.'s right to free speech when the judge held him in contempt, remanded him to jail, closed the proceeding from media scrutiny and ordered him to pay ten thousand dollars in a fine to the judge's "campaign contributor." *Id.* at p. 17, ¶65.

### e. **Conspiracy to Retaliate**

Dean generally alleges that Judge Cates conspired with Baldwin, Cortazzo, Mendler and Mouton to retaliate against his conduct which claims violates his right to protect speech. Id. ¶ 70, P. 18. The gravamen of Deans's complaint is that he challenges the court's authority to manage its cases which cannot conflict with his absolute right to free speech.

### f. **Contempt Proceeding Violated Sixth Amendment**

Dean Jr. alleges that the judge, his law clerk, and the court reporter discriminated against him because he had a right to a public trial and access to the court record was denied. He complains that he also had a right to counsel, to be informed of the specific charges, and the right against self-

---

[9] The questions that form the basis for Dean Jr.'s First Amendment claim are: (a) the location of the *ex parte* meeting to remove him as Administrator; (b) why the court did not issue a removal order in an actual signed order; (c) why the law clerk refused to mail orders to him; (d) why the court quashed his subpoena to the defendants; (e) why the court refused to allow him to obtain appraisals of the Succession properties; (f) why the court's personal friends sold the succession property after it was published; (g) why the court did not require the defendants to produced receipts for moneys spent on successions matters allegedly spent on Dean Jr.'s bills; (h) the court declared him to be racist while expressing sympathy to the law firm; (i) why was he evicted from the estate property; and (j) identification of documents purged by the court and a listing of comments the court found insulting

incrimination before he was held in contempt. Dean Jr. also alleges that the contempt trial should have been heard by another judge to guard against the possibility of actual bias or the appearance of bias. *Id.* at p. 19, ¶ 76.

Dean Jr., who describes himself as a dark-skinned African American male, contends that the judge (who is black), lawyers, law clerk (who is black), court reporter (who is black), and financial institutions discriminated against him due to his race and color (i.e. dark-skinned African American). *Id.* at p. 20, ¶ 77. He alleges that the defendants deprived him of his right to property under the Fifth and Fourteenth Amendments and seeks to have the defendants held liable jointly and severally for compensatory and punitive damages. *Id.*, ¶ 77-78.

### g. **Malicious Prosecution**

Dean Jr. next alleges that the judge, law clerk, his court reporter, and Cortazzo, conspired to prosecute him by forcing the law clerk and the court reporter to testify falsely against him in order to build a case. He alleges that the judge refused to answer a Bill of Particulars detailing why Dean Jr. was being prosecuted and ultimately sanctioned for over $60,000. He alleges that the law firm engaged in elder abuse, that the judge routed the estate business to the judge's family and friends, and refused to distribute his father's estate share until after his death. *Id.* at p. 21, ¶ 81. As a result, Dean Jr. contends that he suffered mental and emotional pain and suffering. He also seeks punitive damages for the malicious prosecution claim.

### 4. **Sheriff Gusman**

#### a. **False Imprisonment**

Dean Jr. next alleges that the judge, Sheriff Gusman, and other persons identified as Jane and John Does violated his Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution. He alleges that a "criminal hearing," rather than a contempt hearing, took place

on May 5, 2016 before Judge Cates and which was closed to the public and the media. He alleges that he was not advised of the charges, found guilty, arrested, and incarcerated for eleven (11) days.  He alleges that Sheriff Gusman kept him in jail beyond the eleven days ordered by the presiding civil court judge.  *Id.,* ¶ 87.  However, there is no indication of how long or if he was actually detained after the order expired.

### b.  Failure to Train, Supervise & Discipline

Dean Jr. alleges that Sheriff Gusman is responsible for training, instructing, and supervising employees that work for the Sheriff's Office. He alleges generally that Sheriff Gusman violated his constitutional rights because of his race and because the Sheriff's Office should have been able to recognize and correct incarceration orders from Civil Court Judges that were written to retaliate against him.  He alleges that the judge's order promoted false imprisonment and that "whites, light-skinned African Americans, and wealthy people are not subjected to false imprisonment."  He alleges that the judge, sheriff, law clerk, court reporter, and unidentified persons acted intentionally to cause him to be falsely arrested and imprisoned without regard for his rights.  He seeks punitive damages against Gusman.

### 5.  Orleans Parish

Dean Jr. generally alleges that he seeks to have the sheriff, judge, and the Parish of Orleans liable under *Monell*[10] and for their supervisory liability. He generally alleges that there was misconduct that was the result of policies, practices, and customs where their employees detained indigent minority and dark-skinned African Americans. *Id.,* ¶ 112-16.

### 6.  Cates, Mouton, Hendrickson, Wight Gilbert, Cortazzo, Clark Hill, Darryl M. Gilbert, Joan Heisser, Melanie Duplechain, Ronald M. Carrere, Joseph A. Bonventure and Joel Mendler

---

[10] *Monell v. Dept. of Social Servs. Of City of New York*, 436 U.S. 658 (1978).

Dean Jr. next alleges that the judge, his law clerk, court reporter, the lawyers from New Orleans and Michigan, his brothers, and the president of the realty company violated his rights pursuant to Title $2 U.S.C. Sections 1985 and 1986 for their monetary gain by their elder abuse as well as racial and class animus. *Id.,* ¶ 140-44. He alleges that all of the defendants profited from the liquidation and transfer of his father's property.

### 7. <u>Conversion</u>

Dean Jr. next allege that his brothers, Dwight and Darryl, Cortazzo, Mendler, Bonventure, Baldwin Haspel, and Clark Hill, PLC converted succession funds. *Id.*, p. 45, ¶160. He also alleges that Melanie Duplechain, along with his brothers, coerced their father who was not functioning at full mental capacity to transfer his lakefront property for their and Judge Cates's benefit. *Id.* He alleges that Joan Heisser, President of Great Developments and Realtors, was granted the exclusive right to sell the property to her friend Melanie Duplechain, a private person. *Id.*, ¶161. He also alleges that the judge authorized the sale of another piece of succession property under market value to a personal friend, Ronald Carerre, Manager of CTC Holdings, LLC. *Id.*, ¶163. He alleges that his brother Darryl committed money laundering by taking their father to various banks and financial institutions and telling him how to transfer his assets, which he contends constitute conversion of succession assets. *Id.*, at p. 44, ¶156-158.

He next alleges that the judge, Joan Heisser (an alleged campaign contributor of the judge), and Capital One aided and abetted the conversion. He alleges that Capital One unlawfully released all of the money held in the succession. He alleges that his brothers impersonated him in his role as administrator of the estate. He alleges that his brothers committed mail fraud (Title 18 U.S.C. § 1341), wire fraud (Title 18 U.S.C § 1343), bank fraud (Title 18 U.S.C. § 1962), money laundering (Title 18 U.S.C. §§ 1956, 1957), interstate or foreign transportation of more than $5000 in stolen

money (Title 18 U.S.C. § 2314) and receipt of stolen money that has crossed state or national borders (Title 18 U.S.C. § 2315).

8. **State Law Claims**

   a. **Cates, Gusman, and Does 1-10**

   Dean Jr. contends that the judge, sheriff and the Does 1-10 should be held liable to him for negligently detaining him longer than the order indicated. *Id.*, ¶103-108. He contends that the defendants failed to timely release him despite his repeated inquiries about the length of his detention. *Id.* He also seek to have these defendants, the law clerk, and court reporter held liable for failing to prevent the harm he suffered.

   b. **Cates and Gusman--Respondeat Superior**

   Dean next alleges that both Judge Cates and Sheriff Gusman should be held liable for the "torts" committed by their agents. He does not describe the alleged torts that the employees committed. He suggests that Judge Cates's liability extends to the illegal activity that he required his law clerk and court reporter to perform for him. Again, there is no description of what they allegedly performed for him. *Id.*, ¶ 117-120. Dean Jr. contends that the Sheriff should be held liable for the payment of damages as a result of the conduct of his employees. *Id.*, ¶ 121-24.

   c. **Insurance Companies**

   Dean Jr. seeks to sue the insurance companies of the defendants, which he identified as ABC Insurances Companies 1-10, who he contends would be contractually liable to pay for the illegal and unconstitutional acts of the "defendants." *Id.*, ¶125-129.

   d. **Fraud**

   Dean Jr. alleges that his brothers committed insurance fraud when they filed a police report on behalf of their father for their deceased mother's wedding ring. *Id.* at p. 47, ¶173-177.

According to Dean Jr., his brother Dwight's wife Julie took the wedding ring from their mother's safe keeping and that his brothers exercised undue influence over their father in order to get him to file an insurance claim. *Id.* He alleges that the judge allowed the lawyers and his brothers to fraudulently charged $146,016.58 against the estate as money owed to their dad for his contribution to the renovation of this mother's property. *Id.*, at p. 48, ¶180(b).

Dean Jr. alleges that the judge awarded his brothers $13,000 from his inheritance for the sale of a 2006 Honda minivan that was in his possession. He contend that the court ignored his argument that the vehicle was overvalued and that the estate did not own the vehicle. *Id.* at p. 49, ¶180(c). He alleges that the judge awarded his brothers $4,000.00 for his household contents which they allegedly disposed of. *Id.*, ¶180(d). He also alleges that the judge awarded his brothers over $600 for parking tickets and for a phone bill which were allegedly both paid for by the Succession for Dean Jr.'s account. *Id.*

Dean Jr. also alleged that the judge allowed his brothers to take another vehicle out of the estate after was purchased by their father, even though it was owned by their dad. *Id.*, ¶180(g). He alleges that his brothers and the law firm used the money they controlled to purchase a vehicle that was already owned from themselves for themselves. He characterizes this action as money laundering. *Id.* Dean Jr. alleges that the judge awarded the law firm and his brothers $41,188.90 in attorney's fees against him so it was able to charge all the fees to his account without double billing. *Id.* He thereafter itemized his complaints about the law firms impact on  the administration of justice: (1) *ex parte* contacts; (2) requesting verification for funds withdrawn for transportation and housing expenses; (3) recusal of the lawyers because of their relationship with the judge; (4) his objection to the false legal description of the property (5) his objection to the denial of due process; (6) his objection to the court's *sua sponte* order to seal the record and

hearing; and (7) the judges failure to take notice of any evidence of alleged elder abuse from his campaign contributors. Dean Jr. proceeds to cite to the *Dred Scott* opinion stating that blacks have no rights which the white man was bound to respect.[11] He proceeds to cite to reversed Supreme Court law as a suggestion that the judge "weaponized" La. C.C. P. 221 to criminalize his attempt to receive impartial justice and incarcerated him for his complaint of theft by wealthy white lawyers. He suggests that the heirs, white people, and light skinned African Americans are not subject to bias and animus by the judge.

### e.   Unlawful Arrest and Imprisonment

Dean Jr. next contends that the judge violated his rights under the Fourth, Fifth, and Fourteenth Amendments by having him incarcerated in front of the media. He alleges that the media and public were removed from the hearing and that investigative reporter David Hammer announced his presence and made attempts to obtain transcripts of the proceedings. He contends that the judge, his staff, and attorney Cortazzo under color of law knowingly deprived him of his constitutional rights because the sheriff escorted him to jail before the media.

### f.   Right to Privacy

Dean Jr. alleges that in 2012, his brothers, while he was out of town returned to the rental house (owned by Debra Dave's friend and rented to his parents), sorted through his personal effects, kept items they wanted, and discarded other items and information. Dean Jr. alleges that his losses included his glasses, money, computer, toothbrush, clothes, medicine, and shoes. He alleges that his brothers and their lawyers conspired to unlawfully evict him from the rental property and to remove him as administrator. He alleges that his brother's violated Section 1983, also but fails to provide an explanation.

---

[11] Notably, Gilbert describes himself as a dark-skinned African American male and the Judge is also an African American male.

### g. **Defamation**

Dean Jr. alleges that the lawyers had an incentive to defame him so as to ensure that their client would be appointed administrator. He alleges Heisser, the President of Lake Forest Homeowners Association, used insider information to ensure that his father would be moved out of Louisiana to cover up an illegality concerning the house next door to his mother.[12]

Dean Jr. alleges that the judge embraced the defendants defamation did the same thing in Michigan by using what happened in Louisiana. Id. at p. 70, ¶260-265. He alleges that his brothers contended that he contributed to their mother's death. He alleges that his brother Dwight had an incentive to defame him in order to replace him as administrator and made sure that the costs and expenses to manage the estate were paid before the estate was closed. *Id.*

### h. **Legal Malpractice**

Gilbert next alleges that the lawyers hired by his brother to represent his father was a legal fiction because his father had an impaired mental and physical condition. *Id.* at p. 74, ¶267-280. He alleges that the lawyers knew or should have known of his father's impaired mental and physical condition. Further, he contends his brother Dwight brought his dad to Michigan and his sister-in-law advised Road Home that his father never received treatment for cognitive impairment. *Id.* He alleges that his brothers, under counsel by the lawyers, took advantage of his father and caused his father to transfer monies held in bank accounts for their own personal use. He alleges that the lawyers aided and abetted the transfer because his father lacked the capacity to contract, could not hire, nor expressed a desire to sell his property. *Id.*

---

[12] Dean Jr. alleges that his mother's oncologist, who is not a party, violated HIPAA by releasing his mother's treatment information and his alleged erratic and irrational behavior which "caused his mother to be without critical health care."

### i. Breach of Trust, Breach of Fiduciary Duty and Intentional Infliction of Emotional Distress.

Dean Jr. also alleges that the lawyers of Baldwin Haspel, namely Hill, Cortazzo, Rouchell, Glenn, Zimmerman, Mendler and Bonventure, breached their fiduciary duties. Dean Jr. alleges that the lawyers owed his father and the other heirs a fiduciary duty by virtue of the attorney-client relationship and a duty not to enrich one heir to the detriment of the others. *Id.* at p. 76, ¶281-288. He contends that the lawyers breached their fiduciary duty to him and his father. *Id.* Dean Jr. alleges that the transactions, sales, and financial deductions for expenses and the refusal to withdraw his father's share of the succession until after his death was for the benefit of his brother Dwight, the lawyers, and the judge. *Id.* He thereafter detailed a list of the ways in which Dwight breached the fiduciary duty.[13]

### j. Intentional Infliction of Emotional Distress

Dean Jr. generally alleges that all of the defendants acted intentionally when they unlawfully removed him as administrator, defrauded his father, sanctioned him, and incarcerated him for over 12 days. *Id.* at p. 79-80, ¶296-299. He alleges that "their" extreme and outrageous conduct caused him severe emotional distress and anxiety. *Id.*

---

[13]Failed or refused to render a true inventory, conducted an unsupervised and unwitnessed pilferage, hid the insurance claim and proceeds for his mom's ring, failed to maintain property insurance which resulted in depreciation of the property, and negligence caused by Road Home violations. He also alleged that Dwight failed to provide documentation for $10,000 in costs, charged $13,000 from his inheritance for a van, deducted over $150,000 from his dad's estate for repairs paid in a grant to Road Home, violated conditions of the Succession bond. He also alleged that Dwight failed to keep the properties rented, failed to account for rental income, failed to sell property, failed to provide documentation for expenses, failed to submit accurate information regarding valuation of his mom's stocks, bonds, annuities and insurance policies, failed to pursue a claim the decedent had for the formaldehyde in the FEMA trailer contributing to his deceased mothers lung cancer. He further alleges that Dwight threatened his mom and dad's physicians for revealing their true medical treatments, failed to receive $7500 grant Road Home for the Winchester property to anchor the foundation, and failed to complete $15,000 of work scheduled from Road Home on the punch list for the Conti property.

### k. **Bank Negligence**

Gilbert alleges that Capital One, the Chicago Teachers Union, and Hancock Holdings were negligent by allowing his brothers to empty the accounts belonging to his father. He alleges that Hancock Holding allowed his brothers to empty and close their mother's safe deposit box. He also alleges that Capitol One allowed Dwight to empty the savings accounts and money market fund of over $100,000 through impersonation of the plaintiff.

### 9. **Louisiana Supreme Court**

Gilbert alleges a claim against the Louisiana Supreme Court contending that Rule XXIII, Section 23 is unconstitutional and violates his First Amendment rights. *Id.*, ¶184. He alleges that he needs a waiver from the court to include a record of the disciplinary action in his appeal, which was denied. *Id.* He alleges that as a result, the Louisiana Supreme Court deprived him of the opportunity to reveal all of the facts of the case and the judge's alleged motives for his retaliatory actions toward him to the Louisiana Fourth Circuit Court of Appeal depriving him of his right of speech and advocacy. *Id.* He thereafter restates all of the allegations against Judge Cates that he wanted to make known to the Circuit Court and the fact that he filed a judiciary complaint against the judge.

### 10. **RICO Violations**

Next, Dean Jr. alleges that the judge and lawyers violated the criminal RICO statute and also the whistleblower provision because the judge, in concert with the lawyers, his brothers, and the realtor, operated his division of court as a corrupt "enterprise" in the form of an "association-in-fact" which was the result of the judge's manner of improperly administering justice. *Id.*, ¶184. He alleges that the most flagrant act was the judge's refusal to allow the state of Louisiana to collect taxes from his friends (Harvey), by procuring allegedly pay-for-play

settlements from his contributors (Hooks), and by rigging judicial elections in local district and appellate courts for wealthy and influential candidates (Woods and Johnson), none of whom are parties to this lawsuit. *Id.*

He alleges that the judge had *ex-parte* communications with the lawyers and conspired to defraud his dad of money due to his diminished capacity. *Id.* He points to six judiciary complaints that he filed, complaints to the media outlets, letters of complaint to the Chief Judge of the Civil District Court, and a bar complaint against the lawyer and a court appointed attorney.

He alleges that he was injured as a result of the judge's actions because the succession assets of both his mom and dad were depleted and converted by the judge's friends and that the banks--namely Capital One, Hancock Holdings and Citibank--failed to protect the funds and deposits his parents had entrusted to them. He alleges that the RICO violation constitutes a deprivation of his rights pursuant to Title 42 U.S.C. Section 1983.

**11. Due Process violations**

    **a.  By the Court and City of New Orleans**

Gilbert next contends that the Civil District Court in Orleans Parish under the leadership of Chief Judge Cates, the Louisiana Supreme Court, and the Mayor of the City of New Orleans Mitch Landrieu have a custom, policy, and practice of discriminating against minority, indigent, and/or dark-skinned citizens charged with criminal contempt in state court. *Id.* at p. 60, ¶210. He alleges generally that poor defendants charged with constructive criminal contempt are not presumed innocent, offered counsel, given a public trial, or counseled on their rights. He also alleges that the defendant is not deemed guilty beyond a reasonable doubt.

He alleges that the Louisiana Supreme Court failed to properly train the judges of the Civil District Court for the Parish of Orleans, which constitutes a municipal policy or custom

that results in deliberate indifference to the rights of indigent minorities or parties including but not limited to Dean Jr.

### b. **By the Law Clerk**

Gilbert also alleges that Mouton, the Judge's law clerk, conspired with the judge, his brother Dwight, and the lawyers to hold *ex-parte* hearings. *Id.* at p. 61, ¶214-218. He alleges that she signed judgments as well as organized and facilitated his removal as administrator through the duty judge without a contradictory hearing. *Id.* He further alleges that she removed his motions from the court's docket, purged the file of his letters critiquing her conduct, refused to memorialize any order dismissing the lawyers' motions and refused to send certain court orders to him. He alleges that her conduct violated Tile 42 U.S.C. Section 1983 and is under color of state law. *Id.*

### c. **By the Judge's Court Reporter, Laurie Hendrickson**

Dean Jr. alleges that Ms. Hendrickson violated his constitutional right to due process because she allegedly conspired with the judge to edit the court transcripts because the transcripts had no record of orders signed during *ex-parte* hearings and the transcripts contained deletions of his argument and the court's commentary toward him. *Id.* at p. 62, ¶219. He alleges that in September of 2012 the attorney inadvertently admitted to redirecting and opening plaintiff's mail, which was stricken from the record. He alleges that the court reporter embellished evidence that would assist the judge in incarcerating him for twelve days. He seeks to have her held liable under Title 42 U.S.C. Section 1983.

### d. **By the Judge for Failing to Disclose Exculpatory Evidence**

Dean Jr. alleges that the judge manufactured evidence and determined in a conclusory fashion that Dean Jr. violated the orders of the court. He contends that the hearing was not fair

since it was a criminal proceeding entitling him to receive exculpatory evidence that was relevant to his incarceration. He alleges that the court denied multiple requests for information during the hearing. He contends that his incarceration was retaliatory and intended to chill his rights to appellate review. He alleges that the judge's actions were based upon colorism.

## C. **Oppositions**

Defendant Dwight Gilbert opposes the proposed amended complaint as being futile. Dwight contends that he was not served in the case, which should be dismissed for insufficient process of service. R. Doc. 45. Dwight also contends that the proposed amended complaint Counts 15, 16, 18, 27, 28, 32, and 33 are futile because they fail to state a claim for which relief may be granted. *Id.* Dwight argues that none of the allegations concerning him as administrator of mother's estate in Louisiana create a viable cause of action for the plaintiff. *Id.*

The City of New Orleans opposes the motion because: (1) it is untimely and therefore futile because the City of New Orleans has no authority over the judiciary; and (2) the amendment would prejudice the city because the period for filing an amended complaint expired several months earlier. R. Doc. 46.

Sheriff Marlin Gusman opposes the motion noting the court's statement that no additional amended pleadings could be filed. R. Doc. 43. Gusman argues that it is untimely and Dean Jr. presents no explanation for the lateness of his submission.

The Baldwin, Haspel, Burke & Mayer firm, and its lawyers oppose the filing of the amended complaint. They also contend that: (1) the filing is untimely and therefore dilatory; and (2) the claims against them are pre-empted.

Judge Cates, his law clerk, and court report also oppose the filing the motion to amend. R. Doc. 16. The judge and his staff contend that they are entitled to absolute immunity, the claims

filed by Dean Jr. are prescribed and untimely for violating the undersigned's order that required the subject amended complaint to be filed not later November 27, 2018. *Id.*

### D. **Supplemental or  Second Amended Complaint**

Dean Jr., during the pendency of the original request to amend, filed a proposed supplemental or second amended complaint to add additional allegations against Judge Cates.  He complains that on February 14, 2018, he filed a motion seeking the recusal of the judge and that after he filed a writ application in the circuit court on March 9, 2018, the judge ultimately recused himself on March 12, 2018. The stated reason for his recusal were the continued personal attacks against him, his family, and staff members. Dean Jr. disputes that he personally attacked the judge and that there were not any witnesses to the alleged personal attacks.  Dean Jr. thereafter summarily re-alleged the conspiratorial allegations against the judge.  He does not, however, state any new claims.

## II. **Standard of Review**

Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings before trial. Rule 15(a) allows a party to amend its pleadings "only with the other party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  Moreover, the Rule urges that the Court "should freely give leave when justice so requires." *Id.*  In taking this liberal approach, the Rule "reject[s] the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

"Rule 15(a) requires a trial court 'to grant leave to amend freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 994 (5th Cir. 2005) (internal quotations marks omitted) (quoting *Lyn–Lea Travel Corp. v.*

*Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002)). When denying a motion to amend, the court must have a "substantial reason," considering such factors as "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . and futility of the amendment.'" *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones*, 427 F.3d at 994).

## III.   Analysis

### A.   Timeliness of Submission

As an initial matter, Dean Jr. has violated the undersigned's filing deadline. The Court notes that he was originally granted permission to file his amended complaint by November 12, 2017. R. Doc. 14. An extension was granted until November 27, 2017, but the subject proposed amended complaint was not filed until February 12, 2018, some three months after the Court's deadline. The Court notes that he did not file a pleading explaining the delay.

The Court only in this limited circumstance will permit the untimely filing because the proposed amended complaint is an eighty-two (82) page document. Given the length of the proposed amended complaint, the Court will excuse only this untimely filing. However, Plaintiff is cautioned that the same rules that apply to attorneys applies to him as a *pro se* litigant. He therefore will be held accountable for complying with the Court's deadlines.

### B.   Futility

#### 1.   Baldwin Haspel Firm and Lawyers and the Clark Hill Firm and Lawyers

##### a.   The Baldwin Haspel Firm and its Lawyers

Dean Jr. contends that the Baldwin Haspel lawyers, Cortazzo, Rocuhell, Mendler, Zimmerman, and Glenn, individually and in their official capacities (hereinafter referred to as the

"Baldwin Layers") failed to tell the judge that estate funds were transferred or converted, that he was enjoined without a hearing, and that the lawyers covertly took the pleading to the judge and secured a temporary restraining order. He complains that the law firm later had him permanently removed as administrator and an order of usufruct was issued to his father. He does not allege that the lawyers were retained to represent his interest.

"Peremption is a period of time fixed by law for the existence of a right. The right is extinguished upon the expiration of the peremptive period. When the peremptive period has run, the cause of action itself is extinguished unless timely exercised." *Rando v. Anco Insulations, Inc.,* 16 So. 3d 1065, 1082 (La. 2009) (citing La. Civ. Code art. 3458) (internal citations omitted).

Louisiana Revised Statute 9:5605 governs legal malpractice and states that an "action for damages . . . whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services" is subject to a peremption period of one year from the date of the "alleged act, omission, or neglect" or one year from the date on which such "alleged act, omission, or neglect is discovered or should have been discovered." La. R.S. 9:5605(A). Moreover, legal malpractice actions are also subject to a peremption period of three years from the date of the alleged act, omission, or neglect. *Id.* As the Louisiana Third Circuit Court of Appeal explained in *Atlas Iron and Metal Co. v. Ashy*, 918 So. 2d 1205, 1209-10 (La. App. 3d 01/04/06):

> There are two ways to start the peremption clock running under La. R.S. 9:5605. The peremption period will begin to run one year from the date when a client knew or should have known about the act, omission, or negligence on the part of his or her attorney that indicates that the client may be a victim of an act of malpractice. See La. R.S.9:5605(A). Additionally, the peremption clock will start running on the date of the act, omission, or negligence that allegedly constitutes malpractice, and will toll three years from that date regardless of whether a client discovered, knew, or should have known about the attorney's alleged malpractice.

The Louisiana Supreme Court has explained that, pursuant to La. R.S. 9:5605, a cause of action for legal malpractice can perempt even if the client never discovers that cause of action, or

the facts never ripen into a justiciable case. *Reeder v. North*, 701 So.2d 1291, 1297 (La. 1997) ("[T]here is no doubt that the [Louisiana] Legislature intended that three years after the 'act, omission, or neglect,' the cause of action is extinguished, regardless of when the negligence is discovered and regardless of whether a malpractice action may be brought within that three-year period.") "If no damages are incurred within three years of the act, omission, or negligence, the cause of action and right of action perempts regardless." *Atlas*, 918 So.2d at 1213 (citing *Reeder*, 701 So.2d at 1297).

The acts about which Dean Jr. complains relating to the Baldwin lawyers is that they did not tell the judge in April of 2012, when they were seeking to have Dean Jr. removed as administrator, that they had already transferred and converted estate funds. He alleges that at the time the lawyers improperly took the removal papers to Judge Cates or his law clerk and got a temporary restraining order signed. He implies that the lawyers never served him or notified him about any subsequent hearing because he had been removed permanently and that after securing the Judgement of Possession, which occurred on October 12, 2015, they claimed moneys that were not shared with him.

He does not allege that these lawyers were retained to represent him individually. He does acknowledge that they were hired to represent the succession and his father's interest. Based upon the allegations set forth by Dean Jr., it is clear that the alleged acts or omissions by the Baldwin lawyers are preempted as the right to assert such a claim arising out of the administrative removal proceeding extinguished in April of 2015. Further, the degree to which he could have asserted a claim arising out of the possession of claimed unshared monies, that claim prescribed on October 2016, one year from the date the alleged taking occurred because the record is clear that he was

aware of the taking at the time. As a result, the claim against Baldwin Haspel and the Baldwin lawyers is futile. The request to amend to assert the proposed claims against them is denied.

### b. **Clark Hill, P.L.C. and the Clark Hill Lawyers**

Dean Jr. also sued the Michigan law firm, Clark Hill, P.L.C. and Joseph Boventure, in their individual and official capacity. He alleges that the firm and Joseph Boventure drafted trusts and powers of attorney which disinherited Dean Jr. and his offspring. He alleges that the Clark lawyers gave his brother Dwight unfettered and unaccountable access to their father's assets.

Dean Jr. attached as an exhibit his father's Last Will and Testament. Article Four of the Will clearly indicates that he was disinherited by his father. R. Doc. 33-2, pp. 9-13. The will expressly states that "my son, Dean Edward Gilbert will be deemed to have predeceased me leaving no descendants surviving." Id. The will was executed on January 31, 2013.

He also seeks to sue the Clark Hill lawyers because they drafted a durable power of attorney for his father, which gave the power of attorney to his brother Dwight and only upon Dwight's death to his wife, Julia Gilbert. The Power of Attorney was signed on January 8, 2013 by his father and witnessed by a Clark Hill lawyer. R. Doc. 33-2, p.17.

Like the claim against the Baldwin lawyers, the claim against the Clark Hill lawyers is preempted with respect to the will. The claim ceased to exist on January 31, 2016. Additionally, the claim against the Clark Hill lawyers with respect to the power of attorney is perempted and no longer exists as of January 8, 2013, three years after Dean Jr. knew about the existence of the power of attorney. Therefore, the proposed amended complaint seeking to assert claims against Clark Hill and the Clark Hill lawyers is denied.

## 2.  Judge Cates, Michelle Mouton, and Laurie Hendrickson

### a.  Judge Cates, IV

Dean Jr. asserts a series of allegations against the judge assigned to preside over the succession proceedings in his individual and official capacity.   He seeks to assert a §1983 claim. In summary, he first alleges that the judge had a conflict of interest because he presided over a case where lawyers appeared before him and who had also made contributions to his campaign fund. Second, he alleges that the judge improperly sealed the proceeding and case record and then unsealed it.  Third, he alleges that the judge violated § 1983 when he twice convicted him of direct and circumstantial contempt of court.

He challenges essentially every judicial act that the judge engaged.   In addition to challenging the action of the judge, he also contends that he was discriminated against by the judge because he is a lighter-skinned black person. Dean Jr. seeks a temporary restraining order and a preliminary injunction preventing Judge Cates from exercising jurisdiction over the now closed case involving the Succession of Bernadette Gaines Gilbert.

He contends that the judge and his staff violated his First Amendment rights when they refused to authorize the production of documents and information post his removal as administrator. He broadly, without any factual basis, alleges that the judge conspired with the lawyers to violate his free speech and which presumably arises out of the temporary sealing of the record and proceeding.  Although he was disinherited by his father, he alleges that somehow the judge and his staff sought to deprive him of "his" right to property.

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."

*Harrington v. Harris,* 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983). Section 1983 does not create any substantive rights, however; it simply provides a remedy for the rights designated therein. *Id.* "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Id.* (citation omitted).

However, it is well established that judges enjoy absolute judicial immunity from lawsuits that cannot be overcome by allegations of bad faith or malice. *Stump v. Sparkman,* 435 U.S. 349, 355-56 (1978). Judicial immunity is clearly applicable in cases, such as the instant one, brought pursuant to 42 U.S.C. § 1983. *See Sparkman,* 435 U.S. at 356; *Pierson v. Ray,* 386 U.S. 547, 554-55 (1967). The Supreme Court has recognized only two instances in which judicial immunity is inapplicable. "First, a judge is not immune from liability for non-judicial actions, i.e. actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions through judicial in nature, taken in the complete absence of all jurisdictions." *Mireles v. Waco,* 502 U.S. 9, 11 (1991) (internal citations omitted).

Regarding the first exception, the Supreme Court has noted:

The relevant cases demonstrate that the factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e. whether they dealt with the judge in his judicial capacity. *Sparkman,* 435 U.S. at 362.

In the past, judicial officers did not enjoy absolute immunity from suits seeking injunctive relief. Relief of that nature was available under Section 1983 against state court judges acting in their judicial capacity. *Pulliam v. Allen,* 466 U.S. 522, 541–42 (1984). However, the Federal Courts Improvement Act of 1996 ("FCIA") amended Section 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief is unavailable." 42 U.S.C. § 1983; *See Machetta v. Moren*, 726 F. App'x 219, 220 (5th Cir. 2018).

Dean Jr.'s allegations against Judge Cates arise out of decisions made during the succession proceeding, which was clearly within the judge's jurisdiction. For example, he complains about the judge's denial of his request for a bill of particulars, the finding of contempt on two occasions, the decision to remove him as administrator, the decision to deny his request for copies of orders, the decision to close the proceeding for the contempt hearing, the decision to seal an unseal the record, and the decision to execute a judgment of possession. Dean Jr. also challenges the judge's decision to appoint experts to handle the sale of succession property. The doctrine of absolute judicial immunity bars Dean Jr.'s suit against Judge Cates in his official capacity.

Although he does not set forth any claims against Judge Cates wherein he challenged conduct outside of his status as judge, he did nonetheless sue him in his individual capacity. However, these claims are prescribed.

Because 42 U.S.C. § 1983 contains no statute of limitations, federal courts look to the most analogous state statute of limitations had the action been brought in state court. *Wilson v. Garcia,* 471 U.S. 261 (1985). In Louisiana, delictual actions are subject to a prescriptive period of one year. LSA-C.C. Art. 3492; *Elzy v. Roberson,* 868 F.2d 793, 794 (5th Cir.1989). The prescriptive period begins to run from the moment the plaintiff knows or has reason to know of the injury that forms the basis of his complaint. *Helton v. Clements,* 832 F.2d 332, 334-35 (5th Cir.1987).

According to the plaintiff's complaint, the judge removed him as administrator in April of 2012. Dean Jr. also alleges that on May 28, 2012, the judge improperly issue and e*x parte* Order of Possession. Additionally, he alleges that the judge issue a final judgment of possession on October 12, 2015, and allegedly violated his rights by closing the contempt proceeding which he characterized as a criminal trial to the media. The exhibit attachments to the complaint show that he was held in contempt and ordered incarcerated on May 5, 2016. At the latest, the prescriptive

period would have run by May 5, 2017. Dean Jr. filed the subject lawsuit on May 8, 2017, on the 368th day. Prescription ran on May 5, 2017. As a result, the claims against Judge Cates are futile and therefore the proposed amendment is denied.

Additionally, Dean Jr. also seeks to enjoin the judge from retaliating against him because the now closed succession proceeding of his mother is still allotted to the judge. However, the Federal Courts Improvement Act of 1996 ("FCIA") amended Section 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief is unavailable." 42 U.S.C. § 1983.

The FCIA therefore statutorily overruled *Pulliam v. Allen*'s holding regarding the availability of injunctive relief against a state judge in his official capacity. *Guerin v. Higgins,* No. 00–0244, 2001 WL 363486, at \*1 (2d Cir. 2001) (unpublished); *Nollet v. Justices of the Trial Ct. of Mass.,* 83 F. Supp. 2d 204, 210 (D. Mass. 2000); *see also Bolin v. Story,* 225 F.3d 1234, 1242 (11th Cir. 2000) (the 1996 amendment to Section 1983 would limit the relief available from a judge to declaratory relief). Injunctive relief is not available to Dean Jr. in this Section 1983 action against Judge Cates. *Tesmer v. Granholm,* 114 F. Supp. 2d 603, 618 (E.D. Mich. 2000); *Nollet,* 83 F.Supp.2d at 210. Therefore, Dean Jr.'s proposed amendment seeking to assert a claim for injunctive relief is denied.

### b. **Michelle Mouton**

Dean Jr. also seeks to sue the judge's law clerk individually and in her official capacity. Dean Jr. alleges that the judge's law clerk or the judge signed the order removing him as administrator of the succession. He alleges that Judge Chase coordinated with Mouton who served as a signatory and issued a Rule to Show Cause on a petition for possession.

He also seeks to sue her because she refused to notify him of certain unidentified court orders. He alleges that after he complained to the judge's law clerk about not sending him copies of significant orders, the judge issued an *ex parte* and *sua sponte* protective order against him presumably forbidding him from contacting her. Dean Jr. alleges that during the proceeding he had many oral and written questions that were sent to the judge's law clerk but that his questions were ignored.

Although he does not allege any specific conduct by Mouton, he alleges that she, the judge, and court reporter denied him a "public trial" and "access to the court file". R. Doc. 33-1, p. 19. He alleges that Mouton was used by the judge when she testified falsely during the contempt proceeding. He alleges that the law clerk unlawfully detained him and falsely imprisoned him when she drafted the "strategically misleading incarceration order". *Id.* at p. 22. He alleges that she failed to intervene when the judge violated his constitutional rights and which caused him to suffer pain and injury. *Id.* at p. 26. He also alleges that Mouton along with the others conspired to violate his rights by defrauding his father and denying him due process. *Id.* at. p. 31.

However, a "judge's law clerk, when assisting the judge in carrying out the former's judicial functions, is likewise entitled to absolute immunity." *Mitchell v. McBryde,* 944 F.2d 229, 230 (5th Cir. 1991). Here, there is no question that Mouton was assisting the judge in carrying out his judicial functions. In fact, plaintiff alleges that Mouton impermissibly usurped the role of the judge. He also alleges that the law clerk was manipulated by the judge when she testified and also failed to intervene once Dean Jr. was held in contempt. Under these circumstances, Mouton enjoys absolute immunity from claims against her in her official capacity.

The individual liability claims against Mouton are also prescribed. According to a brief filed by Dean Jr., the actual contempt hearings took place on April 8, 2016 and April 29, 2016. R.

Doc. 41-3, p. 6. The allegations against Mouton clearly began in April 2012 and would have ended either on April 8, 2016 or April 29, 2016 at the latest, the date of the second contempt hearing if she testified at that hearing. The original lawsuit was filed on May 5, 2017 or on the 372 day such that the claim against Mouton is time-barred. The deadline for filing the complaint against her was on April 29, 2017. As a result, the claims against Mouton are futile and the request to amend to file the proposed amended complaint is denied.

### c. __Laurie Hendrickson__

Laurie Hendrickson, the court reporter for Judge Cates, was also sued by Dean Jr. in her individual and official capacity. He alleges that Hendrickson, like Mouton refused to answer questions he submitted. R. Doc. 33-1, p. 15. He alleges that Hendrickson edited transcripts and refused to produce other transcripts for him and the media. *Id.* at. p. 16. He further alleges that Hendrickson discriminated against him by denying him a public trial and access to his court file.

He does not allege how Hendrickson "denied him a public trial," nor does he allege her role in the denial of "access to his court file," which is typically in the custody of the clerk of court. *Id.* at p. 19. He also alleges that Hendrickson, either alone or in concert, instigated his prosecution by falsely testifying against him and by providing misleading information. *Id.* at. p. 20. Additionally, he alleges that Hendrickson along with the judge, sheriff, and law clerk intentionally caused him to be falsely imprisoned and arrested. He also includes Hendrickson in the group of defendants who conspired to defraud his father and also violate Dean Jr.'s due process rights by liquidating and transferring his father's property. *Id.* at p. 32.

Hendrickson contends that she is entitled to absolute immunity for her actions which were the result of the direction of the judge. Hendrickson also alleges that the claims asserted against her in her individual capacity are prescribed.

It is well established that the Eleventh Amendment only bars recovery against an employee who is sued in her official capacity; it does not protect an employee from personal liability if she is sued in her "individual" or "personal" capacity, since the state treasury is not at risk. *See Farid v. Smith,* 850 F.2d 917, 921–23 (2d Cir.1988); *see also Eng v. Coughlin,* 858 F.2d 889, 897 (2d Cir.1988) ( "It is only when the state official is sued and held liable in his individual capacity that the suit may lie.") (citing *Papasan v. Allain,* 478 U.S. 265, 278 & n. 11 (1986)). Therefore, the official capacity claims against Hendrickson are barred.

The individual capacity claims against Hendrickson, like Mouton, are prescribed. According to Dean Jr.'s proposed complaint her conduct that was problematic for him was: (1) refusal to answer his questions; (2) editing transcripts and refusing to produce them; (3) refusing him access to a public trial and the court record; and (4) failing to intervene to protect his rights of free speech and entitlement to a public hearing. He also alleges that Hendrickson falsely testified which resulted in his arrest. However, all of these alleged actions occurred during the succession proceeding. The final judgment of possession was issued on October 12, 2015. Additionally, the contempt order was issued on May 5, 2016 and the latest hearing took place on April 29, 2016. As a result, the claim against Hendrickson would have expired on April 29, 2017 and the complaint in this case was not filed until May 5, 2017, more than one year after the last act that could possibly give rise to a claim against Hendrickson. As a result, the claims against Hendrickson are futile and the request to file an amended complaint is denied.

### 3. **Sheriff Marlin Gusman**

Dean Jr. also sued Sheriff Marlin Gusman in his individual and official capacities for (1) detaining him beyond the order of incarceration; (2) for failing to properly train, instruct and supervise employees that work for the Sheriff's Office; and (3) for failing to intercede because he

should have been able to recognize and correct incarceration orders from Civil Court Judges which were written to retaliate against him. He alleges that the judge, sheriff, law clerk, court reporter and unidentified persons acted intentionally to cause him to be falsely arrested and imprisoned without regard for his rights. He seeks punitive damages against Gusman.

Officials in their individual or official capacities cannot be held liable for a subordinate's actions via § 1983 on the basis of *respondeat superior. Valle v. City of Houston,* 613 F.3d 536, 541 (5th Cir. 2010); *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 381 (5th Cir. 2005). So strongly have the courts sought to avoid this possibility that they require a showing of deliberate indifference attributable to the official or municipality before allowing a claim to proceed. *Bd. of Cnty. Comm'rs of Bryan County v. Brown,* 520 U.S. 397, 407 (1997). The institution of this standard then explicitly forecloses the ability to rest merely on a showing of negligence (or even gross negligence). *Estate of Davis,* 406 F.3d at 375 (5th Cir. 2015). Putting this standard into the sequence necessary for a plaintiff to properly plead his claim and create a triable issue of fact, the question then is if the official undertook or adopted a policy or custom for which he can be said to be deliberately indifferent to the right of the plaintiff to be free from the use of extended detention past a court order and that specific policy decision was the "moving force of" the constitutional injury. *Brown v. Bryan County, OK,* 219 F.3d 450, 457 (5th Cir.2000).

Here, Dean Jr. alleges that the order of incarceration was issued on May 5, 2016 such that he should have been released on May 16, 2016. R. Doc. 33-2, p. 1. Instead, he alleges that he was incarcerated for twelve days. R. Doc. 33-1, ¶ 222. Somehow, Dean Jr. blames the court for his continued detention by the Sheriff. *Id.* He also suggests that his detention was because he is a dark-skinned African American. *Id.*, ¶113. The claim against the sheriff is frivolous as the allegations in the 82-page complaint do not remotely suggest that he was aware that Dean Jr. was detained

beyond May 16, 2016. As stated by the case law, the sheriff cannot be held liable via *respondeat superior* because of the conduct of his subordinates. As a result, the individual and official capacity claims alleging the sheriff's responsibility for the actions of his subordinates are frivolous such that the proposed amendment request is denied.

Dean Jr. also suggests that the failed to train his deputies on how to interpret court orders. The order which the Sheriff allegedly failed to train his deputies on how to interpret was issued on May 5, 2016. Considering that the claim against the Sheriff is also a Section 1983 claim, the limitations period of one year expired on Friday, May 5, 2017, the one year date from when the order would have been interpreted by the Sheriff's deputies. Dean Jr. did not file the claim against the sheriff until Monday, May 8, 2018. Therefore, Dean Jr.'s request to amend to assert the above claims against Sheriff Marlin Gusman is denied**.**

### 4. <u>Dwight and Darryl Gilbert</u>

#### a. <u>Elder Abuse</u>

Dean Jr. also sued his brothers Dwight and Darryl. He alleges that his brother Dwight persuaded their father Dean Gilbert Sr., who was experiencing cognitive decline, that Dean Jr. had killed his mother and conspired with other relatives to kill their father. He also alleges Dwight retained the Clark Hill P.L.C. firm to prepare a power of attorney for his father which granted the power to handle his affairs to his brother Dwight and in the event of his death, Dwight's wife Julia Gilbert. R. Doc. 33-1. Dwight contends that none of the allegations concerning him as administrator of mother's estate in Louisiana create a viable cause of action for Dean Gilbert, the plaintiff.

Dean Jr. alleges that his brothers, Dwight and Darryl, the lawyers, and the firms they hired converted succession funds. *Id.* at p. 45, ¶160. He contends that his brothers committed elder abuse

against their father. He alleges that his brother Darryl had tens of thousands of dollars of loans from their father for a real estate purchase, his wedding, and his treatment for infertility forgiven. *Id.* at p. 35. He alleges that both of his brother's sought to have him removed as administrator.

Louisiana Revised Statutes 15:1501-1511 protect people who are 60 or older from physical or emotional abuse as well as neglect by care givers. The law also protects seniors from self-neglect. The law protects seniors from other people misusing or stealing their money. This provides the possibility of criminal penalties against individuals that are deemed to have abused an older person. However, it does not provide for civil penalties.

Louisiana Revised Statute 15:1504 protects adults who cannot physically or mentally protect themselves and who are harmed or threatened with harm through action or inaction by themselves or by the individuals responsible for their care or by other parties, by requiring mandatory reporting of suspected cases of abuse or neglect by any person having reasonable cause to believe that such a case exists. It is intended that, as a result of such reports, protective services shall be provided to the adult.

This statute provides a means to protect the elder from abuse and does not provide for a independent cause of action for damages by a child (who is not appointed as guardian) and who suspects that his father was being "abused" by other members of the family. Louisiana would also not have any jurisdiction of the alleged conduct of his brothers regarding the care of their father, who was located in Michigan. Dean Jr.'s allegations are futile and the request to sue his brothers is denied.

### b. **Mail Fraud, Wire Fraud, RICO**

Dean Jr. alleges that his brothers impersonated him in his role as administrator of the estate, committed mail fraud, wire fraud, bank fraud, money laundering and received stolen money cross state borders. R. Doc. 33-1, ¶201.

Mail fraud is a criminal offense pursuant to 18 U.S.C. § 1341. 18 U.S.C. § 241, which criminalizes conspiracy, is the "criminal analogue to § 1985(3)." *Griffin v. Breckenridge*, 403 U.S. 88, 98 (1971). Likewise, 18 U.S.C. § 242 is the "criminal counterpart" to 42 U.S.C. § 1983. *Adickes v. S. H. Kress & Co*., 398 U.S. 144, 166 (1970).

Unlike their civil equivalents, "criminal statutes . . . do not provide a basis to impose civil liability." *See Randolph v. U.S. Dep't of Justice Identity Theft Task Force,* No. WMN-16-36, 2016 WL 112545, at *2 (D. Md. Jan. 8, 2016) (citing *Flowers v. Tandy Corp*., 773 F.2d 585 (4th Cir. 1985)). Thus, "[w]hile criminal penalties may arise under [18 U.S.C. § 241], there is no authority given for private citizens to bring a civil suit for damages under this provision." *Taccino v. City of Cumberland, M*d., WMN-09-2703, 2010 WL 3070146, at *2 (D. Md. Aug. 5, 2010). Nor is there a civil cause of action for violation of § 242. *See United States v. Lanier*, 520 U.S. 259, 270 (1997) (noting that "[42 U.S.C. § 1983] has a civil and [18 U.S.C. § 242] a criminal role"). No private right of action exists for mail fraud. *See Uhre v. Emmett A. Larkin Co*., 205 F. Supp. 2d 475, 478 (D. Md. 2002).

Construing Dean Jr.'s claim liberally, mail fraud qualifies as racketeering activity, for which a civil action exists under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. *See* 18 U.S.C. § 1961(1) (defining racketeering activity). RICO "'is concerned with eradicating organized, long-term, habitual criminal activity,'" not "'all instances of wrongdoing.'" *Mitchell Tracey v. First Am. Title Ins. Co*., 935 F. Supp. 2d 826, 841 (D. Md.

2013) (quoting *U.S. Airline Pilots Ass'n v. Awappa*, LLC, 615 F.3d 312, 317 (4th Cir. 2010). When an enterprise involved in interstate commerce engages in "a pattern of racketeering activity or collection of unlawful debt," RICO provides a cause of action against any individual associated with the enterprise and participating in the racketeering activity. 18 U.S.C. § 1962(c). The term "enterprise" is defined broadly to include any "group of individuals associated in fact." *Kings Square Partnership v. South Savings & Loan Association*, 1987 WL 9811 (E.D. La. Apr. 16, 1987). A pattern of racketeering activity is "at least two acts" indictable under an enumeration of state and federal criminal laws. *Id.*

To state a claim for relief based on a violation of § 1962(c), Dean Jr. must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985). Additionally, the enterprise must affect interstate commerce. See *Day v. DB Capital Group, LLC*, No. DKC-10-1658, 2011 WL 887554, at *13 (D. Md. Mar. 11, 2011).. To allege that Defendants engaged in a pattern of racketeering activity, Plaintiff must plead sufficient facts to allege "'continuity plus relationship,'" i.e., that Defendants engaged in at least two related offenses that constitute racketeering activities, and that those activities "'amount to or pose a threat of continued criminal activity.'" U.S. Airline Pilots, 615 F.3d at 318 (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989)). It

It is noteworthy that while two acts are necessary, they may not be sufficient. *H.J. Inc.*, 492 U.S. at 237 (quoting *Sedima,* 473 U.S. at 496 n.14), as "'proof of two acts, without more, does not establish a pattern. *Id.* at 238 (quoting 116 Cong. Rec. 18940 (1970) (statement of Sen. McClellan)). Rather, Plaintiff must demonstrate either a closed period of repeated conduct or past conduct that by its nature projects into the future with a threat of repetition. *Id.* at 241. Open-ended continuity exists where "the racketeering acts themselves include a specific threat of repetition

extending indefinitely into the future," or "the predicate acts or offenses are part of an ongoing entity's regular way of doing business" or "the predicates are a regular way of conducting defendant's ongoing legitimate business . . . or RICO 'enterprise.'" *Id.* at 242-43. Yet, open-ended continuity is not present when the fraudulent acts occur in an isolated sale. See *GE Investment Private Placement Partners II v. Parker,* 247 F.3d 543, 549-50 (4th Cir. 2001).

Although mail fraud may qualify as a racketeering activity, Dean Jr. does not allege that mail was the means by which his brothers withdrew the funds from the bank. Further, Dean Jr.'s allegations in the complaint establish that his brother Dwight was given power of attorney to transact business on behalf of his father, which naturally would include access to the father's finances held in banks.

The Court notes that the allegations in the complaint do not constitute a claim for mail fraud. Further, his claim of bank fraud is futile. Finally, the claim of wire fraud is defined as "having devised or intending to devise any scheme or artifice to defraud ... transmits or causes to be transmitted by means of wire, radio, or television communication ... for the purpose of executing such scheme or artifice." 18 U.S.C. § 1343. In the complaint, Dean Jr. fails to assert allegations indicating how either of his brothers executed a scheme to defraud him by their actions regarding the succession of their father. Fraud is to be specifically pled pursuant to Federal Rule of Civil Procedure 9(b).

Dean Jr.'s attempt to assert a wire fraud claim against his brothers fails for the reasons assigned above. As a result, to the degree that Dean Jr. intended to uses these claims as predicate acts for a RICO claim, this attempt fails and the request to assert these claims against Dwight and Darryl is denied because they are futile.

### 5. **Orleans Parish**

Dean Jr. alleges that the Parish of Orleans had institutionally a policy to violate the "due process rights of indigent" dark-skinned minority parties subject to contempt of court. Dean then alleges that the Civil District Court in the Parish of Orleans, which he believes was under the leadership of the chief judge, the mayor, and the Louisiana Supreme Court had a "well-known documented custom, policy and practice of failing to protect the rights of dark-skinned citizens charged with criminal contempt in Civil Court." R. Doc. 33-1, ¶208-213. He alleges that the chief judge, Louisiana Supreme Court and the Parish of Orleans failed to train the judges of the Civil District Court resulting in harm to indigent minorities.

Municipalities and local government units are persons subject to liability under § 1983. *Monell v. Dep't of Soc. Services of City of New York,* 436 U.S. 658, 690 (1978). Therefore, local governing bodies "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, ... the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* A local governing body, however, cannot be held liable on the basis of *respondeat superior. Id.* Rather, plaintiff must demonstrate that the local government entity had an official policy (or custom) which was a "moving force" behind a constitutional violation that a "policy maker" of the local government entity knew of, or must have known about. *See Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002) (citation omitted).

As an initial matter, the Parish of Orleans is different than the City of Orleans which is the actual municipality.  Second, the City has no authority over the judiciary and does not set any policies setting forth the administration of the courts, nor is it responsible for the training of judges. In contrast, the powers of the judiciary flow from the State Constitution and are vested in the

various courts. La. Const. art. II, section 1; La Const. art. V, section 1. Dean Jr.'s claim against the Parish of Orleans is futile. As a result, the request to amend to assert a claim against the Parish of Orleans is denied.

### 6. __Joan D. Heisser__

Joan Heisser, the President of Great Developments and Realtors, was also sued by Dean Jr. He contends that she forced the sale of the Succession's property in contravention of his father's wishes. He alleges that she had previously sold a house next door to his parent's property with an encroachment on it. He also identified Heisser in count eighteen as having committed fraud. However, he does not set forth any acts of fraud by Heisser.

Federal Rule of Civil Procedure Rule 9(b) requires particularity when pleading "fraud or mistake," while allowing "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally." Fed. R. Civ. P. 9(b). But "generally" is a relative term. In the context of Rule 9, it is to be compared to the particularity requirement applicable to fraud or mistake. Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid--though still operative--strictures of Rule 8. See 5A C. Wright & A. Miller, Federal Practice and Procedure § 1301, p 291 (3d ed. 2004) ("[A] rigid rule requiring the detailed pleading of a condition of mind would be undesirable because, absent overriding considerations pressing for a specificity requirement, as in the case of averments of fraud or mistake, the general 'short and plain statement of the claim' mandate in Rule 8(a) . . . should control the second sentence of Rule 9(b)").

In this case, Dean Jr. only alleges that Heisser sold the property despite his dad's wishes. He does not allege how this amounts to fraud or any other claim. He also does not indicate why he, after having been disinherited, would be the proper person to advance a claim that would have

allegedly resulted in injury to his father's property. Further, he fails to explain how her prior actions in the sale of the house with an encroachment amounts to fraud. The Court, therefore, finds that the claim against Joan Heisser is futile. The request to permit the filing of the proposed amended is denied.

### 7. The Financial Defendants

Dean Jr., who was disinherited, alleges that Capitol One unlawfully released the money held in the success. He believes that his brothers impersonated him in his role as administrator of the estate, committed mail fraud, wire fraud, bank fraud, money laundering, engaged in interstate or foreign transportation of more than $5000 in stolen money and received stolen money cross state borders. He further alleges that the Chicago Teachers Union and Hancock Holdings were negligent by allowing his brothers to empty the accounts belonging to his dad, his mom's safety deposit box, and a money market fund of over $100,000.00.

First, Dean Jr. does not allege why he would have standing to challenge the release of deposited funds in either banking institution because the accounts were in his parents name and his father disinherited him. Second, the allegations do not set forth any harm he may have sustained. The harm, if any, could only have been to his father who granted the power of attorney to his son Dwight. The court finds that the proposed claims against Capitol One, Chicago Teachers Union, and Hancock Holdings are therefore futile. The request to amend the complaint to add them as defendants is denied.

### 8. Melanie Duplechain

Dean Jr. also sued Melanie Duplechain for conversion. He alleges that Ms. Duplechain coerced his father, Dean Gilbert, Sr. to make real estate transfers. He alleges that the transfers were for the benefit of the other defendants who liquidated the property.

Under Louisiana law, a conversion occurs when:

> (1) possession is acquired in an unauthorized manner;
>
> (2) the chattel is removed from one place to another with the intent to exercise control over it;
>
> (3) possession of the chattel is transferred without authority;
>
> (4) possession is withheld from the owner or possessor;
>
> (5) the chattel is altered or destroyed;
>
> (6) the chattel is used improperly; or
>
> (7) ownership is asserted over the chattel.

*Dual Drilling Co. v. Mills Equip. Invs, Inc..,* 721 So. 2d 853, 857 (La. 1998). The intent requirement is "not conscious wrongdoing, but rather, an intent to exercise a dominion or control over the goods that is inconsistent with another's rights." *Tubos de Acero de Mex., SA* 292 F.3d 411, 479 (5th Cir. 2002) (citing *La. State Bar Ass'n v. Hinrichs*, 486 So.2d 116, 121 (La.1986)). Further, it does not matter "what subsequent application was made of the converted property, or that defendant derived no benefit from his act." *Quealy v. Paine, Webber, Jackson & Curtis, Inc.,* 475 So.2d 756, 760 (La.1985). Therefore, for Dean Jr. to succeed on his conversion claim, he must prove: (1) he owned the real estate that was sold by Duplechain; (2) that Duplechain used the property in a manner inconsistent with Dean Jr.'s right of ownership; and (3) the possession constituted a wrongful withholding of the property. *See Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc.*, 783 F.2d 480, 484 (5th Cir. 1986). However, when the owner consents to or ratifies the taking of his property, he is estopped from bringing an action for conversion. *Blair v. Source One Mortgage Services Corp.,* 1997 WL 250040 (E.D. La. May 9, 1997) (citing *Aymond v. State, Dept. of Revenue & Taxation,* 672 So.2d 273, 276 (La. App. 1st Cir. 1996)).

In this case, Dean Jr. clearly indicates that the real estate at issue was his father's real estate, not Dean Jr.'s. As a result, because Dean Jr. did not own the real estate that was transferred, his attempt to assert a claim for conversion fails. The court also notes that he had no ownership interest

in his father's portion of the property because he was disinherited by his father, who executed a will doing so before his death. Therefore, Dean Jr.'s request to permit the filing of the proposed amendment seeking to assert a conversion claim against Duplechain is futile and therefore denied.

### 9. **Louisiana Supreme Court**

Dean Jr. alleges that Louisiana Supreme Court is required to keep all records of their investigation and discipline of Judge Cates, who presided over his mother's succession proceeding. Dean Jr. points out that he wanted to include a copy of the complaint he filed against Judge Cates in this proceeding, but he needed a waiver to do so which was not granted by the Court. Dean alleges that Rule XXIII, Section 23 (which is incorrectly identified as Rule XXII, Section 23), which provides for the confidential nature of judiciary complaints, is unconstitutional as applied to him because it precludes him from revealing Judge Cate's motives for his "retaliatory action." Dean Jr. alleges that the court's restriction is unconstitutional and the court should be enjoined from concealing his disciplinary complaint against the judge.

Rule XXIII, Section 23 is titled 'Confidential' and provides that "(a) (1) all documents filed with, and evidence and proceedings before the Judiciary Commission or its hearing officers are confidential. Confidentiality may not be waived by the respondent judge; however, the judge may request a waiver of confidentiality from the Supreme Court or the Commission in accordance with the provisions of this section. The record filed by the Commission with this Court and proceedings before this Court are not confidential" and "(2) The Commission may provide documents, evidence, and information from confidential proceedings to entities or individuals in appropriate cases without this Court's approval, in accordance with Subsection (b)."

Subsection (b) provides that the information, although confidential, may be released to law enforcement agencies and the judges and lawyers assistance program, if the judge is up for

appointment the information may be released to any state or federal agency, or pursuant to a waiver by the judge or a waiver of confidentially by the Supreme Court or Commission.

Rule 17(b) of the Federal Rules of Civil Procedure instructs that "capacity to sue or be sued is determined ... by the law of the state where the court is located." Fed. R. Civ. P. 17(b). Therefore, the Court must determine, as an initial matter, whether the Louisiana Supreme Court has the legal capacity to sue or be sued.

Under Louisiana law, an entity must qualify as a "natural person" or a "juridical person" to possess the capacity to sue or be sued. *See, e.g., Dugas v. City of Breaux Bridge Police Dep't,* 99–1320 (La. App. 3 Cir. 2/2/00); 757 So.2d 741, 743. It is clear that the Supreme Court is not a natural person. A juridical person is "an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code. ann. art. 24. Comment (d) to article 24 also provides that "the capacity of a juridical person is governed by provisions in its charter, governing legislation, and customs." La. Civ. Code. Ann. art. 24, cmt. (d). "[I]n the absence of law providing that an entity may sue or be sued, the entity lacks such capacity." *Dantzler v. Pope*, No. 08–3777, 2009 WL 959508, *1 (E.D. La. Apr. 3, 2009) (Africk, J.) (citing *City Council of Lafayette v. Bowen*, 94–584, 649 So.2d 611, 615 (La. App. 3d Cir. 11/2/94).

In *Roberts v. Sewerage & Water Bd. of New Orleans,* the Supreme Court set forth the framework for determining whether an entity qualifies as a juridical person and, as a result, has the capacity to sue and be sued:

> The important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently

and not just as the agency or division of another governmental entity. 92–2048, 634 So. 2d 341, 346 (La. 3/21/94).

Where there is no constitutional or statutory authority for the entity to sue or be sued, that entity is without capacity to be sued under the *Roberts* analysis. *Green v. District Attorney Office,* No. 08–3685, 2009 WL 651132, *4 (E.D. La. Mar. 10, 2009) (Feldman, J.) (citing *Bowen,* 649 So.2d at 613–616). With this in mind, Dean Jr.'s proposed amended complaint seeking to add a claim against the Louisiana Supreme Court is futile and therefore denied.

### 10. **Ronald M. Carrere**

Ronald Carrerre also was sued in his individual and official capacity as Manager of CTC Holdings, LLC. He allegedly conspired to commit "wrongful acts to violate Dean Jr.'s rights in violation of § 1985 and §1986 for their monetary gain through elder abuse and race based animus." R. Doc. 33-1. Dean Jr. alleges that Ronald Carrere is a friend of the judge or the seller's agent and he allegedly purchased the properties at undervalued prices. The properties were presumably the properties of Dean Jr's father.

Section 1985 provides a cause of action for civil rights conspiracies that deprive a person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws. *See* 42 U.S.C. § 1985(3). However, as the Supreme Court explained in *Griffin v. Breckendrige,* 403 U.S. 88 (1971), a § 1985 conspiracy claim requires class-based discrimination based on "invidiously discriminatory animus." *Id.* at 102 n. 10.

Dean Jr. seeks to allege that Carrere and the other defendants, some of whom are African American, conspired to discriminate against him and others because he is a "dark-skinned" African American. He does not allege how Carrere as the selling agent of his father's properties, who allegedly purchased the property, violated Dean Jr.'s civil rights. The properties about which Dean Jr. complains were his father's properties, not his. The degree to which he had an interest in the

properties, Dean Jr. does not allege that Carrere engaged in the sale with the intent to treat him differently because he is a "dark-skinned." Nor is there any allegation as to the skin tone of Carrere. Dean Jr.'s claim against Carrere does not state a claim of invidious discrimination and therefore is futile.

Dean Jr. also alleges a § 1986 claim for neglecting to prevent a conspiracy under § 1985. *See* 42 U.S.C. § 1986. However, a § 1986 claim depends upon a valid § 1985 claim. *See Mississippi Women's Med. Clinic v. McMillan,* 866 F.2d 788, 795 (5th Cir. 1989). The Plaintiffs do not plead facts sufficient to support a conspiracy claim under § 1985. Thus, he cannot allege a § 1986 violation that Carrere is liable for failing to prevent the conspiracy.

### 11. <u>Debra Dave</u>

Dean Jr. also sued Debra Dave, a private person and an alleged agent of the Succession of Bernadette Gaines Gilbert, who was his deceased mother's niece. He alleges that Dave granted access to the interim rental house where Dean Jr. lived. R. Doc. 33-1, p. 68. He alleges that his brothers thereafter sorted through his items and took his personal effects including his business papers. He also alleges that Dave had an incentive to defame him because his brother Dwight promised her that if he became Administrator that the Succession would hire her as an agent and that she would have the first opportunity to buy the property for herself or sell it to her friends.

In *Jaubert v. Crowley Post–Signal, Inc.,* 375 So.2d 1386 (La. 1979), the Supreme Court of Louisiana noted that the right to privacy "embraces four different interests:" (1) appropriation of an individual's name or likeness; (2) unreasonable intrusion on an individual's physical solitude or seclusion; (3) publicity which places an individual in a false light; and (4) unreasonable public disclosure of embarrassing private facts. *Id.* at 1388. The court further explained:

> In Louisiana jurisprudence, the right to privacy has been variously defined as 'the right to be let alone' and 'the right to an inviolate personality.' Where an individual

has such a right, in the form of one of the interests outlined above, other members of society have a corresponding duty not to violate that right. A violation constitutes a breach of duty, or fault, and may be actionable under C.C. 2315, which provides that "every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Where no such right to privacy exists, however, a person's conduct may be the cause of another person's embarrassment, discomfiture, or monetary loss, but it will not constitute a "legal cause," because no duty has been breached.

Even where there right to privacy is found to exist, Louisiana courts have distinguished between invasions of that right which are actionable and those which are not. An actionable invasion of privacy occurs only when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest. For an invasion to be actionable, it is not necessary that there be malicious intent on the part of the defendant. The reasonableness of the defendant's conduct is determined by balancing the conflicting interests at stake; the plaintiff's interest in protecting his privacy from serious invasions, and the defendant's interest in pursuing his course of conduct.

*Id.* at 1388-89 (internal citations and quotations omitted).

Based upon Dean Jr.'s allegations against Dave, she allegedly violated his privacy in the Spring of 2012. A right to privacy claim is subject to a one year prescriptive period. Delictual actions are subject to a prescriptive period commencing from the date that the injury or damage is sustained. La. C.C. art. 3492. Prescription may be interrupted by the commencement of an action against the obligor. La. C.C. art. 3492. Therefore, Dean Jr.'s claim against her for violating his privacy expired in the Spring of 2013, and this lawsuit was not filed until May 5, 2017, four years too late. Therefore, Dean Jr.'s request to amend to assert a right to privacy claim against Dave is denied as futile.

Dean Jr. Also seeks to hold Dave liable for an undescribed defamation. His complaint in this area is bare bones at best. He simply alleges that Dave had an incentive to defame him. However, nowhere in the eighty-two page complaint does he set for the statements that constitute defamation.

Defamation claims sound in tort and as such are subject to a prescriptive of one year, which commences to run from the day the injury is sustained. *Alexander v. Times Picayune*, 221 So.3rd 198 (4th Cir. 2017). Generally, in the context of defamation, prescription begins to run from the date of the publication of the allegedly defamatory remarks. *Id.* at 203. The burden of proving prescription generally lies with the party asserting prescription, however, when a claim has prescribed on its face the burden shifts to the plaintiff to prove that his claim has not prescribed. *Id.* In some exceptional circumstances, the doctrine of *contra non valentum* may serve to interrupt prescription "[w]here the cause of action is neither known nor reasonably knowable by the plaintiff." *Id.* However, where the plaintiff could have learned of his cause of action through reasonable diligence, the "discovery exception" of *contra non valentum* will not apply to interrupt prescription. *Id.*

Again, the alleged defamation by Dave occurred in Spring of 2012 and expired one year later in Spring 2013. Therefore, Dean Jr.'s proposed amendment seeking to assert a defamation claim against Dave is denied.

## 12. <u>Robert W. Veith, M.D.</u>

Dean Jr. also seeks to sue his mother's oncologist, allegedly because he violated HIPAA laws and allowed himself to be known as his mother's primary care physician, and who discharged his mother as a patient because of Dean Jr.'s conduct. Dean Jr. alleges that Dr. Veith disagreed with the decision he and his dad made when they took his dying mother to MD Anderson because Dr. Veith recommended surgical removal of the cancer. Dean Jr. alleges that while his brothers were not interested in aiding in the complicated healthcare decisions regarding their mother, as soon as she died they decided to use a declaration of Dr. Veith to support their allegations of Dean Jr.'s "erratic and irrational behavior." R. Doc. 33-1, p. 71.

HIPPA provides both civil and criminal penalties for improper disclosures of medical information. However, all courts to consider the matter have held that HIPPA does not create a private right of action. See *Acara v. Banks*, 470 F.3d 569, 571–72 (5th Cir.2006) ("While no other circuit court has specifically addressed this issue ... [e]very district court that has considered this issue is in agreement that the statute does not support a private right of action.") (citations omitted). HIPPA "specifically indicates that the Secretary of HHS shall pursue the action against an alleged offender, not a private individual." *Logan v. Dept. of Veterans Affairs,* 357 F. Supp. 2d 149, 155 (D. D.C. July 28, 2004); *University of Colorado Hosp. v. Denver Pub. Co.,* 340 F. Supp. 2d 1142, 1144–45 (D. Colo. Aug. 2, 2004). Since HIPPA does not make available a private right or cause of action, plaintiff has no entitlement to injunctive or monetary relief for alleged violations of the HIPPA. *Howard v. Douglas County Jail,* 2009 WL 1504733, at *4 (D. Kan. May 28, 2009); see also *Acara,* 470 F.3d at 572 ("[T]here is no private cause of action under HIPPA and therefore no federal subject matter jurisdiction."); *Smith v. Smith,* 2007 WL 2332394, at *2 (E.D. Ky. Aug. 13, 2007) (Because plaintiff had no private right of action under HIPPA, claim must be dismissed with prejudice.); *Taylor v. Morse*, 2008 WL 3822962, at *6 (N.D. Cal. Aug. 13, 2008) (Because there is no such right, plaintiff's HIPPA claim is not cognizable under 42 U.S.C. § 1983.). Therefore, Dean Jr.'s proposed amended complaint seeking to sue Dr. Vieth for violating HIPPA is denied because it is futile.

13. **John and Mary Does 1-10, ABC Insurance Companies 1-10 and ABC Bond Companies**

Dean Jr. also seeks to sue ten different unknown insurance companies, ABC Insurance Companies 1-10, to the extent that they provided coverage. John and Mary Does 1-10 are allegedly unknown individuals or entities involved in the violation of the RICO statutes, fraud, theft,

conversion, identity theft, elder abuse, violation of Dean Jr.'s civil and constitutional rights, malicious prosecution, false imprisonment, and over detention. R. Doc. 33-1, p. 6. Dean Jr. alleges that that these fictitiously named defendants are responsible, in some manner, for the occurrences alleged. *Id.* ABC Bond Companies 1-10 are named as "yet unknown bond companies who cover one or more of the defendants." *Id.*

However, fictitious party practice is not permitted in federal court. *Murray v. Sevier*, 50 F. Supp. 2d 1257, 1280 (M.D. Ala. 1999) (observing that there is "no provision for fictitious party practice under federal law"); *Wiggins v. Risk Enterprise Management Limited*, 14 F. Supp. 2d 1279, 1279 n.1 (M.D. Ala. 1998) ("[T]here is no fictitious practice in the Federal Courts."); *Floyd v. Allstate Insurance Company*, 989 F. Supp. 1435, 1436 n.1 (M.D. Ala. 1998) ("[T]he fictitious Defendants named in Plaintiff's Complaint are due to be dismissed, there being no provision for fictitious party practice under federal law.") Therefore, Dean Jr.'s proposed amendment seeking to add the ten insurance companies, bond companies, and John and Mary Does' is denied.

### C. <u>Supplemental or Second Amended Complaint</u>

Dean Jr. filed a proposed supplemental or second amended complaint to add additional allegations against Judge Cates. R. Doc. 65. He alleges he filed a motion to recuse on February 14, 2018, and the judge only granted it after Dean Jr. filed a writ application and the judge said he did so because of Dean Jr.'s personal attacks. Dean Jr. disputes that he personally attacked the judge, his family, and staff and indicates that the judge has no witnesses, did not file a police report, and has no evidence to support the reason for his recusal.

In reviewing Dean Jr.'s new amended complaint, it does not state a new claim. It merely provides additional facts which have no direct bearing on the lawsuit. To the extent that he is challenging the Judge's recusal decision, he is challenging his action as a judge for which Judge

Cates is absolutely immune.  As a result, Dean Jr.'s request to file the supplemental or second amended complaint is denied.

**IV.**      <u>**Conclusion**</u>

    **IT IS ORDERED** that the Plaintiff's **Motion for Leave to File First Amendment of Consolidated Complaint (R. Doc. 33)** is **DENIED.**

    **IT IS FURTHER ORDERED** that **Plaintiff's Motion to File a Supplemental or Second Amended Complaint (R. Doc. 65)** is **DENIED.**

        New Orleans, Louisiana, this July 13, 2018.

                           **KAREN WELLS ROBY**
                **CHIEF UNITED STATES MAGISTRATE JUDGE**